## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| YOSHIE GLOVER, by and through | : | Civil No. 4:13-CV-1874 |
| her son and Power of Attorney, | : | |
| RALPH GLOVER, | : | (Judge Brann) |
| | : | |
| Plaintiff | : | (Magistrate Judge Carlson) |
| | : | |
| v. | : | |
| | : | |
| DARWAY ELDER CARE | : | |
| REHABILITATION CENTER, et al., | : | |
| | : | |
| Defendants | : | |

## REPORT AND RECOMMENDATION

## I.    INTRODUCTION

In this diversity lawsuit, Yoshie Glover, through her son and Power of Attorney, Ralph Glover (the "plaintiff") has brought a medical malpractice action against Darway Elder Care Rehabilitation Center ("Darway") and a number of other individual defendants affiliated with that provider, alleging that the care and treatment that she received while a resident of that facility was sub-standard and resulted in her sustaining serious physical injuries. Darway and a number of individual employees named in the complaint[1] (collectively, the "Darway

---

[1] These parties include: Darway Elder Care and Rehabilitation Center; Monique Beaver; Larsa Connor; Bonnie Crawford; Suzan Ecker; Melissa Geedy;

defendants") have moved to dismiss the action, arguing that the plaintiff brought this lawsuit after the two-year statute of limitations governing medical malpractice claims under Pennsylvania law had elapsed.[2]  (Doc. 8)  In addition, the Darway defendants move to compel arbitration of the plaintiff's claims, pursuant to the terms of a voluntary arbitration agreement that the parties entered into on April 4, 2011, at the time that Ms. Glover entered Darway's care.

The parties fully briefed the motion, with the defendant arguing vigorously that the allegations set forth in the complaint plainly and unequivocally make clear that the claims in this case were known to the plaintiff more than two years before she brought suit, and, therefore, the action should be deemed time-barred and dismissed. The plaintiff has responded chiefly by arguing that the defendant concurred in counsel's express request to file the complaint by July 9, 2013, and, therefore, the statute of limitations should be deemed to have been waived or extended by agreement of the parties.  The plaintiff also suggests that despite what she alleges in the complaint, she did not actually discover her injuries until after July 8, 2011.  She

---

Donna McCarty; Mary Ann Randall; Gold Reibson; Emily Signore; Jennifer Signore; Mary Jane Smith; and Kelly Weaver.

[2]  This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, based upon diversity of citizenship of the parties.  There is no dispute that Pennsylvania substantive law governs the claims in this case, and that Pennsylvania's two-year statute of limitations is applicable.

also argues that the defendant's counsel concealed information necessary to the plaintiff's claims, and, therefore, the statute of limitations period should be deemed to have been equitably tolled.

In addition to the statute of limitations argument, the Darway defendants have also argued that the plaintiff's claims are subject to arbitration pursuant to a duly executed voluntary arbitration agreement that the parties entered into at the time that Mrs. Glover entered Darway.  The defendant thus asserts that under the Federal Arbitration Act, the Court should enforce this agreement, dismiss the lawsuit, and direct the parties to arbitrate the plaintiff's claims.

Upon consideration, we believe the most appropriate and fairest course of action is to adopt Darway's alternative request, and construe the motion to dismiss as a motion to compel arbitration in the first instance.  Our review of the arbitration agreement in this case, and consideration of the parties' arguments regarding its application, causes us to find both that the Federal Arbitration Act plainly applies to the parties' arbitration agreement, and that the agreement is enforceable.  Mindful of the strong federal policies that favor honoring valid arbitration agreements, we recommend that the district court grant Darway's motion to compel arbitration, and

stay the claims against the Darway defendants, thereby deferring consideration of whether the statute of limitations operates to bar those claims.[3]

## II.   **BACKGROUND**

Yoshie Glover was a resident at Darway, in Sullivan County, Pennsylvania, from April 4, 2011, until July 8, 2011.  It appears undisputed that the Glover had a documented history of primary degenerative dementia - Alzheimer's type with behaviors, hypertension, GERG, depression, hypercholesterolemia, history of colon cancer and post-traumatic stress disorder.  (Compl., ¶ 33; and Doc. 8)

According to the plaintiff, due to the negligent care that Glover received between April 4, 2011, and June 4, 2011, while resident at Darway, she sustained a stage II wound on her right buttocks, and a sacral wound.  (Compl., ¶ 68.)  On June 16, 2011, it was determined that Glover had an infected gluteal/sacral wound.  (Id., ¶ 51.)  By June 18, 2011, Glover was no longer physically able to walk in the corridor at Darway.  (Id., ¶ 53.)  By July 6, 2011, Glover had pneumonia and a urinary tract infection.  (Id., ¶ 60.)  On July 8, 2011, "after discovering Mrs. Glover's grave

---

[3]  By proceeding in this fashion, the Court may also avoid attempting to address matters that exist outside of the pleadings that may have a bearing on whether the statute of limitations has run, or was otherwise tolled.  Holding the motion to dismiss in abeyance will also be without prejudice to the parties further litigating this matter at a later point if these proceedings are restarted following arbitration, including by way of a more fully documented motion for summary judgment, rather than through a threshold motion brought under Rule 12(b)(6).

medical condition caused by the Defendants, the family removed Mrs. Glover from defendant Darway and returned her to Hornell Gardens in New York." (Id., ¶ 65.)

On April 4, 2011, Mrs. Glover, through her representative, Audrey Glover, signed a Voluntary Arbitration Agreement with the Darway defendants in which the parties agreed that "ANY AND ALL PAST AND/OR FUTURE CLAIMS, DISPUTES AND CONTROVERSIES (HEREINAFTER COLLECTIVELY REFERRED TO AS "CLAIMS") ARISING OUT OF, IN CONNECTION WITH, AND/OR RELATING IN ANY WAY TO THE ADMISSION AGREEMENT OR ANY SERVICE OR HEALTH CARE PROVIDED BY THE FACILITY TO RESIDENT SHALL BE RESOLVED EXCLUSIVELY BY BINDING ARBITRATION". (Doc. 8, Ex. A, Voluntary Arbitration Agreement)

On May 24, 2012, counsel for the plaintiff wrote to the Darway administrator and made a demand for settlement, and included a discussion about Ms. Glover's alleged care while at Darway, and photographs allegedly documenting injuries that she had sustained as of July 8, 2011. (Doc. 8, Ex. B) On September 28, 2012, the plaintiff's counsel was advised that Ms. Glover had executed the voluntary arbitration agreement, but the parties nevertheless attempted to mediate the dispute. When this was unsuccessful, the dispute ripened into litigation.

However, this dispute developed something of a tangled procedural history before it was even initiated in this Court.  The plaintiff alleges that "[o]n April 2, 2013, prior to the running of the applicable statute of limitations, plaintiff sent a written request to counsel for [Darway], requesting that the defendant identify all physicians and nurses whose signatures were contained in the plaintiff's relevant medical records," but Darway refused.  (Id., ¶¶ 1-2.)

This failure to obtain information about potential individual defendants apparently caused the plaintiff, on April 3, 2013, to file a praecipe for a writ of summons against defendants Darway, Brown, and John Does 1-30, in the Sullivan County Court of Common Pleas.  On May 6, 2013, the plaintiff filed a praecipe to reinstate/reissue writ of summons stating that defendant Brown was unable to be served by the April 2, 2013, issue date.  (Doc. 11, Ex. B)

Darway and Dr. Brown filed praecipes with the Court of Common Pleas, seeking to require the plaintiff to file a complaint.  On June 5, 2013, the plaintiff's lawyer sought informal pre-complaint discovery in an effort to learn the names of some of Ms. Glover's caretakers and medical providers at Darway, and after some initial delay the Darway defendants provided the requested information on June 24, 2013.

Although the plaintiff had initiated proceedings in state court, and although plaintiff's counsel represents that he had obtained an agreement to file his complaint on July 9, 2013, when this date arrived the plaintiff did not file a complaint in the Sullivan County Court of Common Pleas.  Instead, the plaintiff filed the federal complaint that initiated the instant lawsuit.  Thereafter, the defendants served on the plaintiff 10-day notices of their intent to obtain a default judgment based on the plaintiff's failure to file the complaint in Sullivan County.  Then, on August 2, 2013, the plaintiff filed a complaint in the Sullivan County Court of Common Pleas, setting forth claims that are identical to those contained in the complaint she filed in this Court on July 9, 2013.  (Doc. 11, Ex. C, Compl. Docket No. 2013 CV 199)

On August 13, 2013, the Darway defendants filed the pending motion to dismiss, or alternatively to compel arbitration.

## III.   <u>DISCUSSION</u>

Although the Darway defendants begin their motion by seeking dismissal of this action pursuant to Rule 12(b)(6) on the grounds that the action was filed after the expiration of the two-year statute of limitations governing negligence claims under Pennsylvania law, we find it appropriate to consider in the first instance the defendants' alternative request that the Court compel arbitration of the plaintiff's claims.  Considering this issue in the first instance comports both with what appears

clearly to have been the parties' agreement – namely, that disputes would be arbitrated – and is also faithful to the Court's obligation under the Federal Arbitration Act, 9 U.S.C. §§ 1-16 ("FAA"), to give effect to valid arbitration clauses.  Although the plaintiff insists that the FAA has no application to the voluntary arbitration agreement that the parties entered into, we disagree, and find that the FAA plainly applies.  Furthermore, we find unpersuasive the plaintiff's assertions that the voluntary arbitration act should be deemed unenforceable or unconscionable.

### A.    Standard of Review

When deciding a motion to compel arbitration, a district may rely either upon the standards governing motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), or the standards governing motions for summary judgment supplied by Federal Rule of Civil Procedure 56.  See Guidotti v. Legal Helpers Debt Resolution, L.L.C., 716 F.3d 764, 771-76 (3d Cir. 2013).  In this regard, the Third Circuit has provided some guidance as to which standard may be appropriate under the given circumstances in a particular case:

> [W]hen it is apparent, based on the face of the complaint, and documents relied upon in the complaint, that certain of a party's claims are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay. But if the complaint and its supporting documents are unclear regarding the agreement to arbitrate, or if the

> plaintiff has responded to a motion to compel arbitration
> with additional facts sufficient to place the agreement to
> arbitrate in issue, then the parties should be entitled to
> discovery on the question of arbitrability before a court
> entertains further briefing on the question.

Id. at 776 (citation omitted) (internal quotation marks omitted).  Any time that a court

finds that it must make findings in order to determine arbitrability, pre-arbitration

discovery may be warranted.  Id. at 775 n.5.  If a court elects to deny a motion to

compel arbitration under Rule 12(b)(6) in order allow discovery on the question of

arbitrability, "[a]fter limited discovery, the court may entertain a renewed motion to

compel arbitration, this time judging the motion under a summary judgment standard.

Id. at 776.

In this case, as discussed in greater detail below, the issue regarding whether

the plaintiff's claims are subject to arbitration may be readily ascertained from the

undisputed documents that both parties address in their moving papers.  Although the

plaintiff argues about how the arbitration agreement should be construed by the

Court, the plaintiff has not come forward with "additional facts sufficient to place the

agreement to arbitrate in issue."  Id.  Instead, the plaintiff has opposed the motion to

compel arbitration on the grounds that what was a manifestly *voluntary* arbitration

agreement should be construed as an impermissible adhesive contract with oppressive

terms.  This is a legal argument, and one that the plaintiff does not support with facts

or a credible argument to show that further discovery into this issue is warranted before the court may rule on the question of arbitrability of this dispute. We, therefore, do not believe that the plaintiff has shown that discovery into this matter is necessary, and, therefore, recommend that the Court consider this matter on the record that has been made with respect to the Darway defendants' motion to dismiss, which is governed by Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated, Hedges v. United States, 404 F.3d 744, 750 (3d Cir.2005), and dismissal is appropriate only if, accepting all of the facts alleged in the complaint as true, the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face," Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007) (abrogating "no set of facts" language found in Conley v. Gibson, 355 U.S. 41, 45–46 (1957) ). The facts alleged must be sufficient to "raise a right to relief above the speculative level." Twombly, 550 U.S. 544, 555. This requirement "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" of necessary elements of the plaintiff's cause of action. Id. at 556. Furthermore, in order to satisfy federal pleading requirements, the plaintiff must "provide the grounds of his entitlement to

relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir.2008) (brackets and quotations marks omitted) (quoting Twombly, 550 U.S. 544, 555).

In considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record. Sands v. McCormick, 502 F.3d 263, 268 (3d Cir.2007). The court may also consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir.1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir.2002); see also U.S. Express Lines, Ltd. v. Higgins, 281 F.3d 383, 388 (3d Cir. 2002) (holding that "[a]lthough a district court may not consider matters extraneous to the pleadings, a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment.").

In this case, although the plaintiff purports to offer a number of reasons why the claims in this case should not be subject to arbitration, we find these arguments

unavailing when the negligence claims brought in this case are considered against the plain language of the voluntary arbitration agreement itself.

### B.  The Scope of the FAA

The FAA provides in part as follows:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C.A. § 2. The FAA "creates a body of federal substantive law establishing and governing the duty to honor agreements to arbitrate disputes." Century Indem. Co., v. Certain Underwriters at Lloyd's London, 584 F.3d 513, 522 (3d Cir. 2009). Congress enacted the FAA in order "to overrule the judiciary's longstanding reluctance to enforce agreements to arbitrate and its refusal to put such agreements on the same footing as other contracts, and in the FAA expressed a strong federal policy in favor of resolving disputes through arbitration." Id. (citations omitted).

Because arbitration is a contractual matter, prior to compelling arbitration pursuant to the FAA, a court must first determine that (1) an enforceable agreement to arbitrate

exists, and (2) the particular dispute falls within the scope of the agreement.  Kirleis

v. Dickie, McCamey & Chilcote, P.C., 560 F.3d 156, 160 (3d Cir. 2009) (citation

omitted).   Arbitration  should  not  be  denied  "unless  it  may  be  said  with  positive

assurance that the arbitration clause is not susceptible of an interpretation that covers

the asserted dispute.  Doubts should be resolved in favor of coverage."  First Liberty

Inv. Grp. v. Nicholsberg, 145 F.3d 647, 653 (3d Cir. 1998) (internal quotation marks

omitted).

### C.    The Voluntary Arbitration Agreement Is Governed by the FAA

In this case, the plaintiff argues as a threshold matter that the FAA actually has

no application to the voluntary arbitration agreement that the parties entered into,

because  in  the  plaintiff's  view  the  contract  cannot  be  found  to  constitute  a

"transaction involving commerce," and thus falls outside of the FAA's scope under

9 U.S.C. § 2.  We disagree.

As noted, the FAA applies to arbitration agreements that are part of a written

contract "evidencing a transaction involving commerce."  9 U.S.C. § 2.  The phrase

"involving interstate commerce" has been interpreted especially broadly.  In The

Citizens Bank v. Alafabco, 539 U.S. 52 (2003), the Supreme Court observed that the

term "involving commerce" is the functional equivalent of the more familiar term

"affecting commerce," id. at 56, and explained that these are "words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause power," id. (citing Allied-Bruce Terminix Cos. v. Dobson, 513 U.S. 265, 273-74 (1995). Thus, the requirement that the transaction in question involve commerce is satisfied if "in the aggregate the economic activity in question would represent 'a general practice . . . subject to federal control." Citizens Bank, 539 U.S. at 56-57.

It appears undisputed that Darway received Medicare payments to cover the cost of the health care services that were provided to Ms. Glover. This alone would appear sufficient to satisfy that "involving interstate commerce" requirement, and indeed numerous courts have found that this very payment activity satisfies the requirement. See THI of New Mexico at Hobbs Ctr., LLC v. Spradlin, 893 F. Supp. 1172, 1184 (D.N.M. 2012); Canyon Sudar Partners, LLC v. Cole ex rel. Haynie, No. 3:10-1001, 2011 WL 1233320, at *10 (S.D. W. Va. Mar. 29, 2011) (interstate commerce requirement found to be satisfied where nursing home purchased medical supplies, equipment, food and cleaning supplies from out-of-state vendors, and where the resident's care was paid for with federal Medicare funds); Miller v. Cotter, 863 N.E.2d 537, 544 (Mass. 2007) ("[A]ccepting payment from Medicare, a Federal program . . . constitutes an act in interstate commerce" for purposes of the FAA); In re Nexion Health at Humble, Inc., 173 S.W.3d 67, 69 (Tex. 2005) (per curiam)

(observing that Medicare funds cross state lines within "interstate commerce" under the FAA).  More recently, a district court in this circuit concluded that a patient's admission into a care facility, memorialized through a resident agreement, "plainly involve[d] commerce," and, therefore, satisfied the interstate commerce requirement under the FAA.  See Estate of Hodges v. Meadows, Civ. A. No. 12-cv-1698, 2013 WL 1294480, at *9 (E.D. Pa. Mar. 29, 2013); see also Peltz ex rel. Estate of Peltz v. Sears, Roebuck & Co., 367 F. Supp. 2d 711, 717 (E.D. Pa. 2005) (where arbitration agreement is in writing and "evidences a transaction involving commerce to settle by arbitration any controversy," the agreement is within the scope of the FAA).

In addition, it appears from the parties' filings that in 2011, prior to entering Darway's care, Ms. Glover had been a resident at Hornell Gardens in New York, and thus moved into Pennsylvania as part of her admission to Darway.  (Compl., ¶ 66.) When Ms. Glover was removed from Darway on July 8, 2011, she returned to Hornell Gardens in New York.  (Id., ¶ 65.)  In addition to these interstate considerations, it is also simply difficult to perceive how Darway's care and treatment of Ms. Glover during her residency in Pennsylvania could not have involved some measure of interstate commerce, and the plaintiff really does not argue in any persuasive manner that the commercial and medical relationship between the parties did not affect or involve commerce; instead, the plaintiff endeavors to argue only that the receipt of

15

Medicare payments should not be found to sufficiently involve interstate commerce to trigger the FAA's application.  In this regard, the plaintiff is not persuasive.

The only authority the plaintiff offers for the proposition that receipt of Medicare payments does not implicate interstate commerce comes from a 2008 decision of the Oklahoma Supreme Court.  See Bruner v. Timberland Manor Limited Partnership, 155 P.3d 16 (Okla. 2006).  Review of Bruner, however, reveals that the case is both distinguishable on its facts and unpersuasive in its analysis of the interstate commerce issues involved, particularly as it was decided after Citizens Bank, which emphasized the extraordinary breadth of the "involving interstate commerce" language used in the FAA.

Much like the case at bar, Bruner involved a voluntary arbitration agreement that was entered into between a prospective nursing home resident and the nursing home, concurrent with the time the plaintiff became resident in the home.  In consideration of whether the FAA governed the arbitration agreement between the parties, the Bruner court found that the parties' arbitration provision was not governed by the FAA, but grounded this decision by finding that the parties expressly selected Oklahoma law to govern the arbitration provisions, not the FAA; thus, the court's decision is predicated on a choice-of-law analysis, and not in a conclusion about the agreement's commercial impact.  Id. at 30.

16

It is true that in *dicta* the court seems to have concluded that the execution of a nursing home admission contract is a purely local transaction with only "a *de minimus* impact on interstate commerce." Id. at 31. In this same *dictum*, the court further observed that the nursing home's out-of-state purchases from vendors rather than in-state vendors, and use of long distance telephone lines and internet services, were also insufficient "to impress interstate commerce regulation upon the admission contract" between the nursing home and another Oklahoma resident. Id. In addition to the fact that this portion of Bruner is plainly *dicta* and of little persuasive value, we also recommend that the Court decline to follow or rely upon Bruner's analysis of this issue, as it in direct conflict with the well reasoned and persuasive decisions cited above. Moreover, the Court's decision takes an unreasonably narrow view of the "involving commerce" language in the FAA that seems simply wrong when considered against the expansive interpretation emphasized by the United States Supreme Court in Citizens Bank.

Accordingly, for the foregoing reasons, it is recommended that the Court find that the voluntary arbitration agreement that the parties entered into upon Ms.

Glover's admission to Darway in April 2011 constituted a "transaction involving interstate commerce," and is, therefore, governed by the FAA.[4]

### D. The Voluntary Arbitration Agreement is Not Procedurally or Substantively Unconscionable

The plaintiff next submits that the voluntary arbitration agreement is both procedurally and substantively unconscionable, and, therefore, should be declared unenforceable. The plaintiff makes this argument despite language in the agreement showing that the agreement was voluntary and not a precondition of admission to Darway. In addition, the plaintiff relies upon an assertion that the signatory to the agreement subjectively felt as if she had no choice but to sign the agreement to ensure that Ms. Glover had "a place to live," even though such a reading of the agreement

---

[4] Although it is submitted that the "interstate commerce" matter may be resolved on the basis of the documents submitted to date in this action, we note that the Darway defendants have indicated that they are prepared to "submit additional evidence of interstate commercial activity" should the Court deem it necessary. (Doc. 19, at 14) The Darway defendants may wish to provide affidavits or other documentary evidence to the district court within the period for filing objections to this report and recommendation under Local Rule 72.3 to the extent such evidence may further confirm what we submit is already well established in the documents that have been filed – namely, that the agreement between the plaintiff and Darway was a transaction "involving commerce." However, in consideration of Mrs. Glover's medical condition, the passage of time since her injuries were allegedly incurred, and the federal policy favoring enforcement of arbitration agreements, we believe that delaying arbitration in this matter to allow for discovery into whether the FAA governs the agreement would be unwarranted.

is plainly at odds with its terms.  Finally, the plaintiff suggests that the terms of the arbitration agreement are grossly unfair because it is Darway that selects the arbiter when a claim arises.  However, our review of the terms of the voluntary arbitration agreement convince us that is neither procedurally nor substantively unconscionable, and it should be enforced in this case.

A court may find that a contract is unconscionable, and, therefore, unenforceable, when one party to the agreement shows "an absence of meaningful choice together with contract terms which are unreasonably favorable to the other party." Estate of Hodges v. Meadows, Civ. A. No. 12-cv-01698, 2013 WL 1294480, at *6 (E.D. Pa. Mar. 29, 2013) (quoting Witmer v. Exxon Corp., 434 A.2d 1222, 1228 (Pa. 1981); Hopkins v. New Day Fin., 643 F. Supp. 2d 704, 716 (E.D. Pa. 2009).

Unconscionability has both procedural and substantive elements.  Harris v. Green Tree Fin. Corp., 183 F.3d 173, 181 (3d Cir. 1999).  Under Pennsylvania law, both procedural and substantive unconscionability must be established in order to void an arbitration provision.  Id. at 181.  The party seeking to avoid arbitration provision bears the burden of proving facts that could support a finding of unconscionability.  Williams v. Borough of West Chester, 891 F.2d 458, 460 (3d Cir. 1989).  The Pennsylvania Supreme Court has thus summarized the proper analysis as follows:

> [A] contract or term is unconscionable, and, therefore, avoidable, where there was a lack of meaningful choice in the acceptance of the challenged provision and the provision unreasonably favors the party asserting it. The aspects entailing lack of meaningful choice and unreasonableness have been termed procedural and substantive unconscionability, respectively. The burden of proof generally concerning both elements has been allocated to the party challenging the agreement, and the ultimate determination of unconscionability is for the courts.

Salley v. Option One Mortgage Corp., 925 A.2d 115, 119-20 (Pa. 2007).  See also Bensalem Twp. v. Int'l Surplus Lines Ins. Co., 38 F.3d 1303, 1312 (3d Cir. 1994) ("Unconscionability requires a two-fold determination: that the contractual terms are unreasonably favorable to the drafter and that there is no meaningful choice on the part of the other party regarding acceptance of the provisions."); Lucey v. FedEx Ground Package Sys., Inc., 305 F. App'x 875, 877 (3d Cir. 2009) ("Under Pennsylvania law, an arbitration provision is unenforceable on the grounds of unconscionability if two elements are met:  (1) the contractual terms are unreasonably favorable to the drafter, and (2) there is no meaningful choice on the party of the other party . . . . The first element is referred to as substantive unconscionability, while the second is known as procedural unconscionability.").

Procedural unconscionability concerns the process by which the parties entered into the contract.   The Pennsylvania Supreme Court has defined procedural unconscionability as the "absence of meaningful choice on the part of one of the parties." Witmer, 434 A.2d at 1228.  Procedural unconscionability is typically found where there is a contract of adhesion, or a contract that has been drawn up by a party with overarching bargaining power and presented to the other party on a "take it or leave it" basis.  Hopkins, 643 F. Supp. 2d at 717 (citing Denlinger, Inc. v. Dendler, 608 A.2d 1061, 1068 (Pa. Super. Ct. 1992)); see also Alexander v. Anthony Int'l, L.P., 341 F.3d 256, 265 (3d Cir. 2003).  Thus, the general test in Pennsylvania "is whether the party challenging the agreement had any meaningful choice regarding the acceptance of its provisions." Id. (citing Thibodeau v. Comcast Corp., 912 A.2d 874, 886 (Pa. Super. Ct. 2006)).

Substantive unconscionability, in turn, relates to the specific terms contained within the agreement itself.  Somerset Consulting, LLC v. United Capital Lenders, LLC, 832 F. Supp. 2d 474, 487 (E.D. Pa. 2011).  Substantive unconscionability is found where the agreement contains contractual terms "that are unreasonably or grossly favorable to one side and to which the disfavored party does not assent." Harris v. Green Tree Fin. Corp., 183 F.3d 173, 181 (3d Cir. 1999).

21

The arbitration agreement in this case suggests neither procedural nor substantive unconscionability, and the plaintiff's arguments regarding the nature of the agreement and any particular pressure that may have been felt to sign it is undermined by the terms of the contract itself, which emphasizes its voluntary nature, and which was provided to Ms. Glover's representative several days prior to Ms. Glover's admission to Darway.

The plaintiff's argument that the arbitration provision is procedurally unconscionable is really limited to an assertion that she felt that she had to sign the agreement as a condition to Ms. Glover being granted admission to Darway.  But any subjective feelings that the plaintiff now claims that Audrey Glover felt when signing a voluntary agreement – even assuming they were truly felt – are sharply undercut by the plain, and even emphasized language of the agreement itself.  The agreement states, in unmistakable terms, that "[a]greeing to this Arbitration Agreement is not a requirement for admission to the Facility and/or the provision of services by the Facility." (Doc. 19, Ex. E, Voluntary Arbitration Agreement, at p. 4.)  The first three lines of the agreement are set forth in bold typeface, in all capital letters, which state unambiguously as follows: **"VOLUNTARY ARBITRATION AGREEMENT – THIS AGREEMENT IS NOT A REQUIREMENT FOR ADMISSION – READ CAREFULLY."** (<u>Id.</u>)  The agreement encourages the signatory to consult with legal

counsel to the extent there were concerns regarding the effect of the agreement.  The voluntary arbitration agreement was faxed to the Ms. Glover's proxy, Audrey Glover, three days prior to Ms. Glover's admission to Darway, and three days before the agreement was executed by the parties.  (Id.)

In Hodges, supra, the court considered a similar argument made by a plaintiff seeking to avoid an arbitration agreement on the grounds of unconscionability.  The plaintiff in that case claimed that she was "in a weak, almost desperate, position and the admission documents were presented to her with little explanation in a take-it-or-leave-it fashion.  2013 WL 1294480, at *7.  The district court disagreed, noting that the plain language of the agreement emphasized that admission to the nursing home was not contingent on signing.  Id.

The language used in the agreement at issue in this case makes clear throughout that it is voluntary, and thus the plaintiff's purported misinterpretation of the nature of the agreement or its terms is insufficient to cause those terms to be deemed unconscionable.   We do not find anything manifestly unfair or unconscionable about this process.

With respect to the plaintiff's claim that the voluntary arbitration agreement is substantively unconscionable, we are equally unpersuaded.  The plaintiff argues that the agreement is substantively unconscionable because Darway could exercise control

over the selection of the arbitrator and the location of the arbitration.  (Doc. 15, at 24)[5]

Notably, the agreement is relatively balanced between the parties.  Neither party is limited in their ability to take discovery in aid of arbitration, and the parties are to bear the costs of arbitration equally.  The agreement does not provide for caps on recoverable damages.  While Darway is empowered to select the arbitrator and the location of the arbitration, this provision only limited the location of the arbitration to be at Darway's facility or another site "within a reasonable distance" from Darway.  Given that the agreement was being entered into in connection with Mr. Glover's residence at the Darway facility, this provision hardly seems unfair, much less unconscionable.  The plaintiff has offered no legal support for the assertion that the foregoing terms should be considered unconscionable, and we likewise have found none.  The terms of the agreement are neither grossly one-sided nor manifestly unfair.

Having found that the arbitration agreement in this case was not procedurally or substantively unconscionable, we recommend that the agreement be enforced in

---

[5]   Additionally, the plaintiff contends that the agreement is unconscionable because it provides that challenges to the agreement itself would also be subject to arbitration.  This last argument would appear irrelevant at this point, since it is the United States District Court for the Middle District of Pennsylvania resolving whether the claims in this case are arbitrable, and not an arbitrator.  Thus, this argument is not a legitimate issue, or reason to find the arbitration agreement is unenforceable.

this case.  We will also recommend that the district court stay the plaintiff's claims brought in this Court against the Darway defendants, retain jurisdiction over this action, and defer consideration of the Darway defendants' argument regarding the timeliness of this lawsuit, pending a report from the parties regarding the outcome of arbitration.

### E.    Stay of State Court Proceedings

In closing their reply brief, the Darway defendants request that the Court enter an order staying the action pending in the Sullivan County Court of Common Pleas State Court pending arbitration.  Although the parties hardly address the merits of this request, or acknowledge its potential implications with respect to federalism, we nonetheless find that staying the state court action with respect to the plaintiff and the Darway defendants is both appropriate and necessary.

In most cases, "[i]n keeping with principles of federalism and respect for the sovereignty of the several states and their judicial system," Insurance Newsnet.com, Inc. v. Pardine,  Civ. A. No. 1:11-CV-00286, 2011 WL 3423081, at *4 (M.D. Pa. Aug. 4, 2011), federal courts are prohibited by the Anti-Injunction Act from issuing injunctions to stay proceedings in state courts.  28 U.S.C. § 2283.  However, the Anti-Injunction Act permits federal courts to enjoin actions pending in state court where (1) an injunction is expressly authorized by Congress; (2) an injunction is necessary

in aid of its jurisdiction; or (3) an injunction is necessary to protect or effectuate its judgments.  Id.

The FAA does not, by its terms, expressly empower federal courts to enjoin state court proceedings.  However, courts have found that such injunctions may be issued under the second exception to the Anti-Injunction Act, because they are necessary in aid of federal jurisdiction.  See, e.g., Insurance Newsnet.com, Inc. v. Pardine, Civ. A. No. 1:11-CV-00286, 2011 WL 3423081, at *4 (M.D. Pa. Aug. 4, 2011); Morgan Stanley Dean Witter Reynolds, Inc. v. Enterman, No. 03-2247, 2003 WL 22020065, at *3 (E.D. Pa. July 3, 2003); Cent. Reserve Life Ins. Co. v. Marello, No. 00-3344, 2001 WL 41129, at *2 (E.D. Pa. Jan. 17, 2001); Speciality Bakeries, Inc. v. RobHal, Inc., 961 F. Supp. 822, 830 (E.D. Pa. 1997).

In this case, allowing the parallel action in the Sullivan County Court of Common Pleas to proceed against the Darway defendants "would eviscerate the arbitration process and make it a 'hollow formality,' with needless expense to all concerned." Speciality Bakeries, 961 F. Supp. at 830.  Because the parties agreed to arbitrate "any and all past and/or future claims, disputes and controversies . . . arising out of, in connection with, and/or relating in any way to the admission agreement or any service or health care provided by facility to resident," and because we find that the plaintiff's claims in this case – and the parallel state action – must be arbitrated

26

pursuant to this agreement under the FAA, it is recommended that the Court exercise its authority to stay the parallel state court lawsuit pending arbitration.

## IV.   <u>RECOMMENDATION</u>

Accordingly, IT IS HEREBY RECOMMENDED THAT:

1.   The Darway defendants' motion (Doc. 8) should be considered as a motion to compel arbitration.

2.   The motion to compel arbitration (Doc. 8) should be GRANTED and the parties ordered to participate in arbitration proceedings in accordance with the terms and conditions of the voluntary arbitration agreement that they entered into on April 4, 2011.

3.   This federal action should be STAYED pending the outcome of the arbitration proceedings.

4.   The Court should enter an order STAYING the parallel state court litigation pending before the Sullivan County Court of Common Pleas, Docket No. 2013 CV 199.

5.   The Court should retain jurisdiction over this action, and defer any further litigation, including consideration of the timeliness of the plaintiff's claims against the Darway defendants, pending a report on the outcome of the arbitration process.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 4th day of February, 2014.

*S/Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge